[No. C057444. Third Dist. Oct. 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ROBERT NEWBY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Victor S. Haltom for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Defendant William Robert Newby was tried by jury and convicted of aggravated mayhem, infliction of corporal injury on a cohabitant, battery, criminal threats, and grand theft. The trial court sentenced defendant to an indeterminate term of life in prison with the possibility of parole on the aggravated mayhem, plus a consecutive term of two years on the grand theft. The trial court stayed imposition of sentence on the other counts.

On appeal, defendant contends that the trial court prejudicially erred in instructing the jury, pursuant to CALCRIM No. 800, that a "disfiguring injury may be permanent even if it can be repaired by medical procedures." Defendant further contends that consecutive sentencing on the grand theft count contravened his Sixth Amendment rights under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] and its progeny.

As will be explained more fully below, both of defendant's contentions must fail. We affirm the judgment.

FACTS AND PROCEEDINGS

Defendant was informed by his fiancée, Julie H., that she was leaving him. Defendant's response was to grab Julie by the throat and punch her in the face several times with his fist. Eventually falling to the floor, drifting in and out of consciousness, Julie watched as defendant continued the attack by kicking her in the face with his steel-toe boots. Throughout the attack, defendant repeated: "[Y]ou are fucking dead, you are fucking dead, you bitch, you are fucking dead." When defendant was finished, he took Julie's engagement ring and departed.

Defendant beat Julie so severely that her nose was pushed into her nasal cavity. Several facial bones, including those supporting the nose and those surrounding the eyes, were shattered. Fragments of these bones were strewn throughout her nasal cavity, causing air from her sinuses to get into the fat tissue around the eyes. One of her front teeth was also broken off at the root. A deep, bleeding gash beginning at her collapsed nose extended to her forehead. Julie's injuries required reconstructive surgery. Once the bone fragments were removed from her sinuses, a titanium plate was inserted into the side wall of her nose to provide the structure previously provided by the missing bone. The reconstructive surgeon was able to lighten the scarring on Julie's face with several laser treatments, but the scarring will remain a permanent feature of her face.

Defendant was charged with attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a); undesignated statutory references that follow are to the Penal Code), aggravated mayhem (§ 205), inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)), second degree robbery (§ 211), assault with a deadly weapon (§ 245, subd. (a)(1)), battery resulting in serious bodily injury (§ 243, subd. (d)), and criminal threats (§ 422). The amended information also alleged that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) during the commission of the attempted murder and the infliction of corporal injury.

Defendant was tried by jury and convicted of aggravated mayhem, infliction of corporal injury on a cohabitant, battery, criminal threats, and grand theft. The trial court sentenced defendant to an indeterminate term of life in prison with the possibility of parole on the aggravated mayhem, plus a consecutive term of two years on the grand theft, and stayed imposition of sentence on the other counts.

DISCUSSION

I

*Instructional Error*

Defendant's first contention on appeal is that the trial court prejudicially erred in instructing the jury, pursuant to CALCRIM No. 800, that a "disfiguring injury may be permanent even if it can be repaired by medical procedures." Defendant asserts that this instruction lessened the prosecution's burden of proof on the element of permanence of the disability or disfigurement. We do not agree.

Section 205 provides in relevant part: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body."

The instructional language to which defendant objects comes from the case of *People v. Hill* (1994) 23 Cal.App.4th 1566 [28 Cal.Rptr.2d 783] (*Hill*). There, as here, the victim was punched and kicked in the face several times causing numerous facial fractures. (*Id.* at p. 1570.) The victim's sinus cavity filled with blood and bone fragments, and a metal plate was surgically implanted into his face to hold his bones together. (*Ibid.*) Hill was tried and convicted of mayhem in violation of section 203.

Section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

On appeal, the defendant complained of an instruction that told the jury that the " 'infliction of an injury forbidden by a mayhem statute may constitute an offense notwithstanding the possibility that alleviation of the injury is medically possible.' " (*Hill, supra,* 23 Cal.App.4th at p. 1571.)

■ The Court of Appeal rejected Hill's position: "[I]n a prosecution for mayhem, the word 'permanent' can no longer be applied in its literal sense since medical technology is increasingly capable of effective cosmetic repair of injuries that would otherwise be permanently disfiguring. Advances in medical technology do not, however, in any way diminish the culpability of one who intentionally disfigures another. We therefore reject appellant's claim

that the instruction improperly relieved the prosecution of the need to prove that the disfiguring injury was permanent. The jury was properly instructed regarding the elements of mayhem and the instruction at issue did not in any way suggest that permanence was not required. As we have explained, the challenged instruction only advised the jurors that an injury may be considered legally permanent for purposes of mayhem despite the fact that cosmetic repair may be medically feasible. In this context that is the proper legal understanding of the word 'permanent.' " (*Hill, supra,* 23 Cal.App.4th at pp. 1574–1575, fn. omitted.)

In *People v. Williams* (1996) 46 Cal.App.4th 1767 [54 Cal.Rptr.2d 521] (*Williams*), the Court of Appeal followed the *Hill* decision, explaining that "the possibility that a victim's disfigurement might be alleviated through reconstructive surgery is no bar to a finding of 'permanent' injury. [Citations.]" (*Id.* at p. 1774; see also *People v. Keenan* (1991) 227 Cal.App.3d 26, 36, fn. 6 [277 Cal.Rptr. 687] (*Keenan*) [victim's breasts were burned with cigarettes; the fact that it "might be medically possible to remove the scars" would be "insufficient to alleviate the offense"].)

Defendant attempts to distinguish *Hill, Williams,* and *Keenan* by pointing out that these cases involved convictions for simple mayhem, as opposed to aggravated mayhem. According to defendant, the aggravated mayhem statute "contains an express permanency requirement," while the simple mayhem statute does not contain such a requirement. Defendant is correct that section 205 uses the word "permanent" while section 203 does not. However, the crime of simple mayhem has been consistently interpreted since the enactment of the Coventry Act in 1670 (in response to an assault on Sir John Coventry by persons who slit his nose for obnoxious words spoken by him in Parliament) to require a permanent disfiguring injury. (*Keenan, supra,* 227 Cal.App.3d at p. 34 ["Our current mayhem statute is based upon the Coventry Act of 1670, which first broadened mayhem to include . . . disfigurement." (fn. omitted)]; *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 624 [148 Cal.Rptr. 799] ["Cases decided under the Coventry Act, and statutes like our own which obviously derive from it, have found mayhem for disfigurement alone only where the injury is permanent."]; *People v. Newble* (1981) 120 Cal.App.3d 444, 452–453 [174 Cal.Rptr. 637] [in order to constitute § 203 mayhem, a disfiguring injury must be permanent]; *Hill, supra,* 23 Cal.App.4th at p. 1571 ["[t]o prove mayhem based on a disfiguring injury, the injury must be permanent"].)

 "The Legislature is presumed to be aware of ' "judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]" ' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 659 [68 Cal.Rptr.3d 51, 170 P.3d 623].) Moreover, where the Legislature uses

a term well understood by the common law, we must presume that the Legislature intended the common law meaning. (*People v. Ogen* (1985) 168 Cal.App.3d 611, 622 [215 Cal.Rptr. 16].) In enacting section 205, we presume that the Legislature was aware that the crime of mayhem required a permanent disfiguring injury and used the word "permanent" in section 205 to codify that requirement. ■ Consequently, the requirement that a disfiguring injury be "permanent" is the same requirement for purposes of simple mayhem under section 203 as it is for purposes of aggravated mayhem under section 205.

Defendant's arguments to the contrary are unavailing. Defendant cites no authority indicating that the Legislature, by using the word "permanent" in section 205, intended to require the permanent disfiguring injury to be more permanent with respect to section 205 than section 203. Indeed, the difference between simple mayhem and aggravated mayhem, justifying life imprisonment for the latter while the former is punishable by a maximum term of eight years in prison, is the requisite criminal intent. "There are two key differences between the crimes: the required intent and the potential sentence. [¶] Mayhem is a general intent crime. [Citation.] . . . [¶] Aggravated mayhem, on the other hand, requires the specific intent to cause the maiming injury. [Citation.]" (*People v. Park* (2003) 112 Cal.App.4th 61, 64 [4 Cal.Rptr.3d 815]; see also *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162 [37 Cal.Rptr.3d 884]; *People v. Ferrell* (1990) 218 Cal.App.3d 828, 832–833 [267 Cal.Rptr. 283].) We have found no case law suggesting that, in addition to the specific intent required for aggravated mayhem, the disfiguring injury must also be more permanent than the permanent injury required for simple mayhem.

■ Moreover, while defendant is correct to point out that we must "begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context" (*People v. Watson* (2007) 42 Cal.4th 822, 828 [68 Cal.Rptr.3d 769, 171 P.3d 1101]), the dictionary definition of "permanent" which he himself cites demonstrates that the word does not necessarily mean irreparable: "The word permanent means '[c]ontinuing or *designed to continue indefinitely without change*; abiding, lasting, enduring; persistent. Opposed to temporary.' [Citation.]" (Italics added; see 11 Oxford English Dict. (2d ed. 1989) p. 574.) Certainly, a disfiguring injury may be designed to continue indefinitely, and therefore "permanent" within the ordinary meaning of section 205, despite the fact that the injury may be repaired by cosmetic surgery.

In sum, both sections 203 and 205 require that the disfiguring injury be permanent; such requirement was grafted to section 203 by case law and incorporated into section 205 by the Legislature. The difference between the

two sections, justifying an enhanced sentence for aggravated mayhem, is the requisite criminal intent, i.e., specific intent to cause the disfiguring injury. Defendant's protestations notwithstanding, there is no indication that the Legislature, by using the word "permanent" in section 205, intended the permanent disfiguring injury required for aggravated mayhem to be more permanent than that which would satisfy the permanent disfiguring injury requirement under section 203.

■ We hold that the permanent disfiguring injury requirement is the same under each statute. Consequently, the trial court did not err in instructing the jury that a "disfiguring injury may be permanent even if it can be repaired by medical procedures." In the context of mayhem, whether simple or aggravated, "that is the proper legal understanding of the word 'permanent.' " (*Hill, supra*, 23 Cal.App.4th at p. 1575.)

In any event, even if we were of the opinion that the instruction erroneously described the element of permanence for purposes of section 205, the error would be harmless beyond a reasonable doubt. (See *People v. Mayfield* (1997) 14 Cal.4th 668, 774 [60 Cal.Rptr.2d 1, 928 P.2d 485] [instructional error that "misdescribes an element of an offense is harmless only if 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" ' "].) The record demonstrates that Julie had a titanium plate permanently implanted into her face to provide the structure previously provided by the facial bones defendant shattered. Julie will also have a permanent scar extending from her reconstructed nose to her forehead. While the reconstructive surgeon was able to lighten the scarring on Julie's face with several laser treatments, the scarring will remain a permanent feature of her face. These disfiguring injuries are "permanent" based on any reasonable understanding of that word. (See *Hill, supra*, 23 Cal.App.4th at p. 1571 [any error would be harmless in light of metal plates and wires permanently implanted into victim's head to hold his facial bones in place, permanently sunken eye, double and triple vision due to tear duct injury, decreased sensation in his upper lip, and increased chances of sinus and eye infections].)

II

*Consecutive Sentencing*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante*, page 1341.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 2009, S168928.